## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT**

I, James F. Loomis, being duly sworn, depose and state as follows:

### **Affiant Background and Purpose of Application**

1. I am a Task Force Agent (TFA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and I have been since September 2023. In my capacity as a TFA, I am familiar with the federal laws relating to the acquisition, possession, and transfer of firearms and the distribution of, possession with the intent to distribute, and conspiracy to distribute controlled substances. I have been trained in the investigation of violations of those laws, and I have participated in many such investigations. I am also a Border Patrol Agent (BPA) Intelligence (Intel) [BPA-I] with the United States Border Patrol (USBP), a component of the Department of Homeland Security (DHS), assigned to the USBP Swanton Sector. I have been employed as a BPA since August 2011. I am currently assigned as a BPA-I and have been so since May 2019. My current duty station is at the Richford Station in Richford, Vermont. I received formal training to identify and investigate alien, narcotics, and firearm smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico from August 2011 to January 2012 and through regular and recurring on-the-job training and course certifications.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device—further described below and in Attachment A, which is incorporated herein—that is currently in the possession of ATF and the seizure from this device for the electronically stored information described in Attachment B. This warrant application arises from an Orleans County Sheriff's Department (OCSD) vehicle stop and subsequent interview of Gordon "Donnie" Richards who was the driver and sole occupant of the vehicle. The device to be searched is a blue Motorola

(Model XT2317-3) cellular telephone, which was seized from the Richards's vehicle by OCSD on March 25, 2024 (the "DEVICE"). The DEVICE is currently located at the ATF Field Office in Burlington, Vermont.

3. Based on my training and experience, the DEVICE has been stored in a manner such that the data on the DEVICE is likely to remain intact and in the same condition as at the time of the DEVICE's seizure. The applied-for warrant would authorize the forensic examination of the DEVICE for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence offenses of narcotics and firearms trafficking that Richards engaged in while using the DEVICE.

4. In my experience investigating smuggling offenses and firearms and narcotic trafficking offenses, I have found that electronic devices such as cellular phones similar to the DEVICE were commonly used to facilitate international smuggling events and domestic trafficking of illicit narcotics and illegal firearm sales and trades. Smugglers and traffickers often use these devices to coordinate procurement, sales, transport, and distribution of their illegal commodities, as well as the distribution of proceeds related to those offenses. In my experience, traffickers often use third party applications—such as WhatsApp, Facebook Messenger, Snapchat, Telegram, etc.—such that when data are acquired from recipients of the communications or from the service providers may be difficult to attribute to a particular user. Further, such services often use levels of encryption to protect the nefarious content and context of their communication. Examination of such electronic devices seized directly from the suspected smuggler or trafficker can lead to attribution of those communications to the possessor(s) of the devices.

5. The information contained within this affidavit is based upon my training and experience, my own investigative efforts, and investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. The information in this affidavit is meant to set forth probable cause to believe that the violations have occurred and that evidence of them will be found on the DEVICE; it does not necessarily include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant to be direct quotations or complete descriptions.

## Probable Cause

6. On February 20, 2024, Deputy Dan Locke of the Orleans County Sheriff's Department (OCSD) was investigating a report of a stolen all-terrain vehicle (ATV) in the town of Orleans, Vermont. While interviewing a juvenile[1] who was associated with the stolen ATV, the juvenile requested Deputy Locke run a stolen firearm check on two firearms in his possession that had been purchased from Gordon "Donnie" Richards of Derby, Vermont. Deputy Locke ran checks on a Benelli, Super Black Eagle 3, 12-gauge shotgun (serial number U548902W16) and a U.S. Military Surplus, 1903A3-style, .30-caliber bolt-action rifle (serial number 1262184). The Benelli shotgun had been reported stolen as recorded by the Orange, Connecticut Police Department in December 2021. The juvenile told Deputy Locke that the juvenile's mother had purchased the Benelli shotgun for $500 from Gordon Richards as a Christmas present for the juvenile. The juvenile further told Deputy Locke that he had purchased the .30-caliber rifle

---

[1] The identity of the juvenile is known to law enforcement, including your affiant. I will refer to him herein only as the "juvenile" and the pronoun s/he. I am not aware of any criminal convictions or juvenile adjudications for the juvenile.

directly from Richards for $250 at Richards's residence on Lower Quarry Road in Derby, Vermont in November 2023. Deputy Locke took possession of both firearms and placed them into the evidence vault at OCSD. During a subsequent interview, the juvenile told Deputy Locke that Richards had also offered to sell the juvenile an AR-15 rifle in February 2024 for $200.

7. On March 25, 2024, Deputy Locke was on a routine patrol as part of his assigned duties near the town of Coventry, Vermont. A Dodge Ram passed Deputy Locke traveling northbound on Vermont Route 5. Deputy Locke followed the vehicle northbound and witnessed the truck's left side tires cross over the center line of the road three times in a short distance. Deputy Locke then conducted a traffic stop on the Dodge Ram along Route 5. I have discussed the traffic stop with Deputy Locke and watched a video recording associated with it.

8. Deputy Locke determined that the driver and sole occupant of the Dodge Ram truck was Gordon Richards. Deputy Locke was familiar with Richards due to previous law enforcement contacts. Deputy Locke knew that Richards had been convicted of at least one crime punishable by imprisonment for more than one year (colloquially, a "felon"), such that he would not be allowed to legally possess firearms. While conducting a roadside interview of Richards, Deputy Locke observed, in plain view, suspected drug paraphernalia and a pistol in the center console area of the truck.

9. Deputy Locke questioned Richards about the pistol. Richards claimed to have no knowledge of the pistol and gave Deputy Locke consent to remove the firearm from the vehicle. Deputy Locke asked Richards if Richards was a "felon," and Richards acknowledged that he was. Deputy Locke removed a Bryco Model 38, a .380-caliber semi-automatic pistol (serial number 1262184), from the truck Richards was driving. Deputy Locke cleared the pistol for safety and noted it was loaded with four rounds of ammunition in its magazine.

10. Deputy Locke asked Richards for consent to search Richards's person, and Richards agreed. Richards told Deputy Locke that he had crack (which I know, based on my training and experience, to refer to cocaine base) in his pocket. Deputy Locke discovered two containers in Richards's front pocket. One of the containers contained approximately 0.6 grams of suspected cocaine base. Richards admitted to Deputy Locke that he had smoked crack cocaine earlier in the day. Deputy Locke also asked Richards for his consent to search his vehicle, and Richards consented. Deputy Locke located and seized a scale and more drug paraphernalia during the resulting search.

11. Deputy Locke detained Richards on suspicion of driving while intoxicated and of firearm and narcotic offenses. Richards was transported to the OCSD for further processing and investigation. During the subsequent processing, Deputy Locke advised Richards of his *Miranda* Rights. Richards stated that he understood his rights and agreed to waive his right to have an attorney present during questioning. Deputy Locke contacted me to assist him in interviewing Richards regarding the suspected firearm and narcotics offenses.

12. I arrived at the OCSD to assist, and Deputy Locke escorted Richards into an interviewing room. I introduced myself to Richards as a Border Patrol Agent and as an individual who also works with ATF. I asked Richards if he knew what ATF was, and he stated that he did. Richards stated that Deputy Locke had read him his rights and that he had previously signed a form acknowledging his understanding and waiving his right to have an attorney present. I also advised Richards of his rights, and he stated that he understood them. Deputy Locke and I proceeded to interview Richards, and the interview was recorded. During our interview, Richards made the following summarized relevant statements.

a. Richards stated both that the pistol found in the truck he was driving belonged to and was left in the truck by his brother-in-law and that the pistol does not currently work.

b. When asked about his occupation, Richards stated that he is a "drug dealer" who sells crack cocaine. Richards stated he sells 1-2 ounces of crack every day and has done so for a few years. Richards claimed to be one of the biggest drug dealers in the area.

c. Richards acknowledged that he is a felon and believed he had multiple felony convictions. He stated he knew that he was not allowed to possess firearms.

d. Richards admitted to having brokered trades of firearms for crack. Richards admitted that most of those firearms ended up in the possession of large-scale drug dealers who take them to other cities.

e. Richards admitted to receiving a Benelli shotgun and acknowledged that a juvenile had received the shotgun.

f. Richards admitted to buying an AR-10 rifle for $700, but he claimed that it had been stolen from him and that he no longer had it.

g. Richards admitted to currently possessing a .22-magnum handgun that previously belonged to a deceased family member. Richards stated that he was willing to go to jail for that gun.

h. Richards stated that he uses his cell phone (the DEVICE) to facilitate his narcotic and firearm deals. Richards stated that he used the DEVICE for both phone calls and Facebook messenger communications.

13. I asked Richards for consent to search his phone (the DEVICE). Richards declined to grant consent, but he told me he would show me anything I wanted to see. Deputy Locke brought in the DEVICE, which had been found in the driver's side compartment during the vehicle stop. Richards entered the DEVICE's passcode and began operating the DEVICE.

   a. Richards opened the Facebook messenger application on the DEVICE and began quickly scrolling through chats, briefly showing me the contents. I observed multiple profiles with which I am familiar with through other firearms and narcotics investigations in the Newport and Saint Johnsbury areas.

   b. In multiple chats, I observed Richards being offered "zipps". I asked Richards what a "zip" is, and Richards stated that a "zip" is slang for an ounce of crack. I asked Richards to show me conversations regarding firearms, and he briefly showed me a chat with someone asking him about a "380".

14. Based on our interactions, including his handling of the DEVICE, I concluded that Richards was not sincere when he told me he would show me everything on the DEVICE in which I was interested. For example, Richards was selectively picking chats to open, and he would not open some chats I requested to view. When Richards did open a chat, he scrolled through quickly in a manner that prevented me from seeing the entire context. At the conclusion of the interview, I placed the DEVICE into airplane mode, and Deputy Locke seized the DEVICE for evidence and stored it in the OCSD evidence vault. I have since taken possession of the DEVICE and it is currently stored at the ATF Field Office in Burlington, Vermont.

15. On March 29, 2024, I received a certified record from Orleans County District Court indicating Richards had been convicted in 1989 for attempted burglary. Richards was sentenced in that case to 1-3 years' incarceration for that felony conviction.

## Conclusion and Requests

16. Based on the foregoing, I submit there is probable cause to believe that, in the District of Vermont, Gordon "Donnie" Richards violated 21 U.S.C. § 841 and 18 U.S.C. § 922 by distributing controlled substances and by possessing firearms while being prohibited from doing so. Further, there is probable cause to believe he facilitated the illegal transfer of firearms. Based on the information provided above, there is also probable cause to believe that evidence of those offenses will be located inside the DEVICE. I respectfully request the issuance of a search warrant authorizing the examination of the DEVICE, further described in Attachment A, and the seizure therefrom of the data described in Attachment B.

17. Because this warrant seeks only permission to examine the DEVICE, which is already in the possession of a law enforcement entity, the execution of this warrant does not involve the physical intrusion onto premises. Accordingly, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 5th day of April 2024.

James F. Loomis
Task Force Agent, ATF

Sworn and subscribed before me this 5th day of April, 2024.

Honorable Kevin J. Doyle
United States Magistrate Judge
District of Vermont